[No. C022085. Third Dist. Feb. 27, 1997]

In re the Marriage of JOY M. AND ERIC W. PETERS.
JOY M. PETERS, Appellant, v.
ERIC W. PETERS, Respondent.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rules 976(B) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Arnold David Breyer, Bien & Summers and E. Elizabeth Summers for Appellant.

Michael B. Dashjian and Deane Sellon for Respondent.

## OPINION

DAVIS, J.—In this bifurcated marital dissolution proceeding, Joy M. Peters (Joy)[2] appeals from the judgment establishing the date of separation (Fam. Code, § 771 [undesignated section references will be to this code]) from Eric W. Peters (Eric). In the published part of the opinion we conclude the determination of a date of separation is proven by a preponderance of evidence rather than by clear and convincing evidence. In the nonpublished part of the opinion we find there is substantial evidence to support the trial court's selection of a separation date. We will summarize the evidence adduced at trial in the portion of the discussion analyzing its sufficiency, and affirm the judgment.

### DISCUSSION

### I

 Joy argues that the law and "public policy" require a higher burden of proof than preponderance of the evidence to determine the date of separation pursuant to section 771.[3] Before we address the merits of the issue, we consider Eric's contention that Joy has waived appellate consideration of it because she failed to raise it initially in the trial court.

---

[2] Because the parties share a surname, we shall refer to them by their first names for clarity of reference.

[3] The statute, which continues the substance of former Civil Code section 5118 without change (11 Witkin, Summary of Cal. Law (9th ed., 1996 supp.) Community Property, § 10, p. 166), provides, "The earnings and accumulations of a spouse . . . , while living separate and apart from the other spouse, are the separate property of the spouse."

Issues usually cannot be raised for the first time on appeal. (*In re Marriage of Hinds* (1988) 205 Cal.App.3d 1398, 1403 [253 Cal.Rptr. 170].) An exception is occasionally made where, as here, the issue presents a pure question of law. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512].) We will thus reach and reject the contention on the merits.

■ Evidence Code section 115 provides for three burdens of proof (defined as "the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact"). " '*Except as otherwise provided by law*,' " issues of fact are determined by a preponderance of the evidence. (*Weiner v. Fleischman* (1991) 54 Cal.3d 476, 483 [286 Cal.Rptr. 40, 816 P.2d 892]; Evid. Code, § 115.) A higher standard is "clear and convincing" proof, which has been held to require evidence " 'so clear as to leave no substantial doubt.' " (*In re Jost* (1953) 117 Cal.App.2d 379, 383 [256 P.2d 71].) The highest standard is proof beyond a reasonable doubt, applied to cases involving deprivation of important personal rights. (1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and Presumptions, § 162, pp. 139-140.)

Contrary to Eric's insistence that it is not for this court to establish an alternate standard of proof without direction from the Legislature, Evidence Code section 115 expressly contemplates exceptions to the preponderance standard developed by the common law, because the determination of the degree of proof to be applied in a particular situation is the kind of question which has traditionally been left to the judiciary to resolve. (*Weiner v. Fleischman, supra*, 54 Cal.3d at p. 483; *People v. Burnick* (1975) 14 Cal.3d 306, 314 [121 Cal.Rptr. 488, 535 P.2d 352].)

■ The degree of burden of proof applied in a particular situation is an expression of the degree of confidence society wishes to require of the resolution of a question of fact. (*Weiner v. Fleischman, supra*, 54 Cal.3d at p. 487.) The burden of proof thus serves to allocate the risk of error between the parties, and varies in proportion to the gravity of the consequences of an erroneous resolution. (*Ibid.; People v. Burnick, supra*, 14 Cal.3d at p. 310.) Preponderance of the evidence results in the roughly equal sharing of the risk of error. (*Weiner, supra*, 54 Cal.3d at p. 488.) To impose any higher burden of proof demonstrates a preference for one side's interests. (*Ibid.*) Generally, facts are subject to a higher burden of proof only where particularly important individual interests or rights are at stake; even severe civil sanctions not implicating such interests or rights do not require a higher burden of proof. (*Id.* at p. 487; see *Addington v. Texas* (1979) 441 U.S. 418, 423-424 [99 S.Ct. 1804, 1807-1808, 60 L.Ed.2d 323] [clear and convincing

standard required only when interests at stake are "more substantial than mere loss of money"].)

 To determine whether a higher standard of proof is warranted in the present situation, we must first identify the interests at stake. Section 760 provides that all property acquired during marriage is community property. The interests of a husband and wife in the community property are "present, existing, and equal." (§ 751.) However, property acquired after a separation is classified as the acquiring spouse's separate property. (§ 771.) A spouse does not have any interest in the separate property of the other spouse. (§ 752.) Therefore, a determination of the date of separation affects only the classification of property, depending on whether it was acquired before or after the separation.

The risk of error in this classification of property is identical for both spouses. If the trial court selects the earlier of two contested dates of separation, the property a spouse accumulated after that date will be that spouse's separate property, and the other spouse will lose the half interest in it under section 760. However, if the court selects the later separation date, then the same property will be community property and the accumulating spouse will lose a half interest in it by operation of section 760. The determination of a separation date, therefore, results in the loss of an economic interest in property by one or the other of the spouses. Which spouse loses this economic interest depends on the trial court's determination of the separation date. The interests of the parties are inverse but equal. Since both parties have identical economic interests at risk in contesting the date of separation, it would otherwise be appropriate to apply the preponderance standard on the issue because of its roughly equal distribution of the risk of error. (*Weiner* v. *Fleischman*, *supra*, 54 Cal.3d at p. 488.)

Joy does not identify any constitutional basis for departing from the preponderance standard (such as *Burdick*'s concern with due process). Based on the statutory presumption that property acquired during marriage is community property, she argues any attempt to overcome that presumption should require a higher burden. She cites cases which suggest an evaluation of the evidence in separation date cases must take into account that section 771 effects a transmutation of this "fundamental" community presumption. (*In re Marriage of von der Nuell* (1994) 23 Cal.App.4th 730, 734 [28 Cal.Rptr.2d 447]; *In re Marriage of Baragry* (1977) 73 Cal.App.3d 444, 448 [140 Cal.Rptr. 779].) In the first place, neither case expressly stands for imposing a higher burden of proof, and it is the general rule cases are not authority for propositions not expressly considered. (*Honey Baked Hams, Inc.* v. *Dickens* (1995) 37 Cal.App.4th 421, 428 [43 Cal.Rptr.2d 595].)

Second, the Supreme Court has repeatedly cautioned against making too much of the choice of language in judicial opinions describing burdens of proof without taking into consideration the statutory preference for proof by preponderance in civil action. (*Weiner* v. *Fleischman, supra,* 54 Cal.3d at p. 484; *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 289 & fn. 6 [137 Cal.Rptr. 635, 562 P.2d 316]; *Edmonds* v. *H. W. Wilcox* (1918) 178 Cal. 222, 224-225 [172 P. 1101].) Third, this "fundamental" presumption can be set aside as simply as by the joint execution of an antenuptial agreement providing that all accumulations during marriage are to be presumed to be the separate property of the accumulator. Finally, the transmutation is the consequence that a statute of equal dignity ascribes to the state of separation. Thus, the mere fact that property which otherwise might be characterized as community will be considered separate is no reason for a higher standard of proof.

The history of section 771 itself also undermines Joy's position. The predecessors to the statute displayed a preference for one party over the other, providing that the earnings and accumulations of a wife while she was living separate from her husband were her own separate property, while a husband's earnings were his separate property only if his wife abandoned him unjustifiably. (11 Witkin, Summary of Cal. Law, *supra,* Community Property, § 9, p. 381.) In 1971, however, the Legislature amended the statute to provide that either spouse's earnings and accumulations after a separation were separate property. (*Id.* at p. 382.) This amendment suggests the Legislature intended husbands and wives to be treated equally on this issue, even at a time when a husband was more likely to be the primary wage earner and thus divest the wife of her former interest in his earnings during separation.

Turning to the common law, Joy argues that cases in analogous situations have used language similar to the clear-and-convincing standard. (*Estate of Duncan* (1937) 9 Cal.2d 207 [70 P.2d 174]; *Estate of Jolly* (1925) 196 Cal. 547 [238 P. 353]; *Estate of Brenneman* (1958) 157 Cal.App.2d 474 [321 P.2d 86]; *Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116 [264 P.2d 626].) This argument again runs afoul of the problem of using language from opinions which do not expressly consider departing from the preponderance standard. (*Weiner* v. *Fleischman, supra,* 54 Cal.3d at p. 484; *Honey Baked Hams* v. *Dickens, supra,* 37 Cal.App.4th at p. 428.)

Moreover, when we compare this risk of the loss of an economic interest with the interests at stake in cases applying the "clear and convincing" standard, it falls short. All involve interests more substantial than the mere loss of money. (*In re Angelia P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198] [termination of parental rights]; *Lillian F.* v. *Superior Court* (1984) 160 Cal.App.3d 314 [206 Cal.Rptr. 603] [capacity of conservatee

to consent to treatment]; see *Weiner* v. *Fleischman, supra,* 54 Cal.3d at p. 489 [contradiction of duly executed deed of title]; *Addington* v. *Texas, supra,* 441 U.S. 418 [civil commitments]; *Woodby* v. *Immigration Service* (1966) 385 U.S. 276 [87 S.Ct. 483, 17 L.Ed.2d 362] [deportation proceedings]; *Chaunt* v. *United States* (1960) 364 U.S. 350 [81 S.Ct. 147, 5 L.Ed.2d 120] [denaturalization proceedings].) Nor does proving the intent to separate encounter the difficulties which have led courts to impose higher standards of certainty. (See *Weiner, supra,* 54 Cal.3d at p. 489 [proof of oral agreement to make will, one party deceased; proof of terms of oral trust, courts require specificity to enforce].) Thus, there is no basis in precedent to depart from the preponderance standard for proof of the date of separation.

Joy urges *us* to take the step of establishing a higher standard on the basis of public policy considerations. She argues that it is unfair for a party to testify to an intention to end the marriage after engaging in equivocal conduct, "keeping the other spouse on an emotional and financial 'chain.' " However, the trial court does not base its decision solely on a party's testimony regarding intent. (*In re Marriage of Hardin* (1995) 38 Cal.App.4th 448, 451 [45 Cal.Rptr.2d 308].) The court looks at the conduct of the parties as an indication of the subjective intent. (*Id.* at p. 453.) Thus, even if one of the parties testifies to an intent to sever the relationship completely, the trial court can find to the contrary if the concomitant conduct does not support the stated subjective intention.

Alternatively, Joy suggests that a higher standard would encourage the party who wants the earlier date of separation to choose less ambiguous alternatives of demonstrating a subjective intent to establish separate property rights. However, Joy offers no explanation for why the burden to choose less ambiguous conduct should be imposed on the party seeking to establish a separate interest and not the party seeking to establish a community interest, which would be the effect of a higher burden of proof. Both parties stand to lose the same economic interest, both parties have recourse to means of determining the intent of the other, and thus both parties should be equally burdened with the duty to protect their respective marital rights.

Finally, Joy argues the task of the trier of fact would be facilitated by raising the burden of proof. However, preponderance is the default burden of proof for every issue in civil law and even some issues in criminal law. We are not convinced that a trial court has any more difficulty in determining a date of separation than in determining whether a confession is voluntary under the circumstances of interrogation. This suggestion thus begs the question why the determination of a date of separation is qualitatively *different.*

Because the interests at stake are the same for both parties and the interests involved are economic, the parties should share the risk of error roughly equally. The preponderance of the evidence standard is sufficient.

II*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Morrison, J., concurred.

A petition for a rehearing was denied March 25, 1997, and appellant's petition for review by the Supreme Court was denied May 21, 1997.

---

*See footnote 1, *ante,* page 1487.