[No. A109531. First Dist., Div. Five. May 22, 2007.]

In re the Marriage of SEMRIN and VAHID ETTEFAGH.
SEMRIN ETTEFAGH, Appellant, v.
VAHID ETTEFAGH, Respondent;
HASHEM ETTEFAGH, Respondent.

[CERTIFIED FOR PARTIAL PUBLICATION*]

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, parts I.C., II. and III. of this opinion are not certified for publication.

**COUNSEL**

Ozro William Childs for Appellant.

James I. Cohen for Respondents.

**OPINION**

**SIMONS, Acting P. J.**—On appeal from a judgment of dissolution, Semrin Ettefagh (Semrin)[1] challenges numerous property and support rulings issued by the trial court. In the published portion of our opinion, we examine the standard of proof required to overcome the rebuttable presumption contained in Family Code section 760[2] that property acquired by either spouse during marriage is community property. The parties agree that the presumption is

---

[1] Because the parties share a surname, we refer to them by their first names for clarity.

[2] Family Code section 760 provides: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

All undesignated section references are to the Family Code.

rebuttable, affects the burden of proof and is overcome by sufficient evidence that the property was a gift to one of the spouses. The parties divide, however, on the quantum of evidence required. Semrin claims that the trial court erred in holding that the presumption of section 760 could be rebutted if her former husband, Vahid Ettefagh (Vahid) established by a preponderance of the evidence that the contested property was a gift to him. She asserts that clear and convincing evidence of a gift is required to rebut the community property presumption. We conclude, however, that the trial court applied the correct standard of proof. In the unpublished portion of the opinion, we reject a number of other arguments raised by Semrin and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

### The Parties

Semrin is a native of Turkey. As a teenager, she moved with her family to Los Angeles, where, in 1971, she met Vahid, a native of Iran. The couple married in August 1972. Both attended college in the United States, after which they moved to Iran in 1977. The parties had two children, one of whom, Jehan, was a minor at the time of trial. Semrin and Vahid separated in 1996. Semrin later returned to California and filed a petition for dissolution of the marriage on August 28, 1997. After the petition was filed, the parties stipulated to the joinder of Vahid's father, Hashem Ettefagh (Hashem), as a claimant in the proceedings.

### Properties in Controversy

At trial, one of the principal contested issues was the characterization of four parcels of California real estate (collectively the California properties). The first parcel acquired was referred to as "Santa Ana Court" in Tiburon and was deeded to "Vahid Ettefagh, an unmarried man," on May 4, 1987. This recital in the deed is obviously incorrect, since Vahid had been married to Semrin for over a decade at the time the property was deeded. Hashem testified at trial that he provided the funds for the purchase of this property. Vahid testified that he invested neither his personal funds nor any funds from his family's textile corporations in the Santa Ana Court property. Vahid later conveyed the property to Hashem on March 8, 1994.[3]

---

[3] This deed, like the others transferring Vahid's interests to Hashem, bears the date "08.03.94." It appears that this date was written in the European fashion of "day/month/year" and that despite the appearance, the actual date of transfer was March 8, 1994, not August 3, 1994.

The parties refer to the second parcel as the "Larkspur Shopping Center property." On April 27, 1990, the Southern Pacific Transportation Company transferred this property to Vahid and his sister, Maryam Ettefagh, granting each an undivided one-half interest. This deed also erroneously refers to "Vahid Ettefagh, an unmarried man." Again, Hashem testified that he contributed funds used to purchase the property, but that Vahid did not. Vahid testified that he contributed neither personal nor corporate funds to its acquisition. On March 8, 1994, Vahid conveyed this property to Hashem.

The third and fourth properties are both located in Santa Rosa. The parties refer to them as "Santa Rosa large" and "Santa Rosa small." On August 5, 1992, Vahid's sister, Shahla Ettefagh, conveyed a 50 percent interest in the "Santa Rosa small" property to "Vahid Ettefagh, a married man as his sole and separate property." Hashem's testimony was that he used money from his Bank of America account for the downpayment on this property and that Vahid paid no money for the property when it was purchased. Vahid also testified that none of his funds were used for the purchase. Vahid conveyed his interest in this property to Hashem on March 8, 1994.

Hashem granted an undivided one-half interest in the fourth parcel, the "Santa Rosa large" property, to Vahid on January 23, 1989. Vahid testified that his funds were not used to purchase the property. By grant deed dated March 8, 1994, Vahid conveyed his interest in this property to Hashem.

In addition to the properties in California, the parties also had significant real property holdings abroad, including several pieces of real property in Iran and Turkey. These included an interest in a residential property on Anaherta Street in Tehran, parcels of property identified as "Golnar," an apartment referred to as "Lavasoon," a ski chalet in Shemshak, Iran, seaside apartments located in Ayvaluk, Turkey, and parcels of land referred to as Shomal 1, 2 and 3.

### The Trial Court's Decision

After an 18-day trial, on January 19, 2005, the trial court issued a 20-page statement of decision, making a number of dispositions regarding the parties' real and personal property, and awards of spousal and child support. We summarize only those aspects of the statement of decision relevant to the issues on appeal.

After reviewing the testimony concerning the California properties, in which Semrin claimed a community property interest, the trial court noted that "[g]enerally, these properties were either purchased by Hashem with his own funds and then title placed in that of his son Vahid in order to assist him in obtaining a green card and entry into the United State[s], or, Vahid sent money he had earned during the marriage from Iran to his father in California so that his father could purchase property and invest for Vahid." The parties agreed that these properties were presumed to be community assets under section 760 because they were acquired during the marriage. Despite the presumption, the trial court found that the California properties were Vahid's separate property. It explained there was no documentary evidence supporting Semrin's claims that the funds used to purchase these properties came from her husband. In addition, the trial court appears to have credited Hashem's testimony that he purchased these properties with his own funds and simply placed title in Vahid's name.

In reaching its decision concerning the California properties, the trial court expressly rejected Semrin's contention that the community property presumption of section 760 can only be overcome by clear and convincing evidence. Citing *In re Marriage of Haines* (1995) 33 Cal.App.4th 277 [39 Cal.Rptr.2d 673], the trial court concluded that a party seeking to overcome the presumption established by section 760 must establish the separate nature of the property by a preponderance of the evidence. Since section 760 is not a title presumption, "virtually any credible evidence" could be relied upon to overcome it. The court determined that the presumption had been rebutted because "the evidence demonstrates that Vahid acquired interests in the California properties as gifts from his father Hashem. There is insufficient testimony and no written documentation to the contrary."

The trial court also made a number of determinations regarding the parties' ownership interests in their properties abroad, dividing those interests in equal shares between Semrin and Vahid.[4] The court further ordered Vahid to provide Semrin with a written legal description of all of the properties in which the court had held that Semrin had an interest.

Regarding the parties' minor son, the trial court ordered Vahid to pay Semrin monthly child support of $1,054. It also ordered Vahid to pay one-half of the $1,471 monthly cost of Jehan's health insurance. The trial court ordered the parties to share equally all reasonable uninsured medical and dental expenses incurred on Jehan's behalf.

---

[4] The trial court distributed equally the Lavasoon apartment, the Shemshak ski chalet, two apartments in Ayvaluk, and a one-twelfth interest in a parcel of undeveloped land referred to as Shomal 2.

DISCUSSION

Semrin raises four issues in this appeal. Her first·argument is that the community property presumption of section 760 can be rebutted only by the production of clear and convincing evidence. Semrin's second contention is that the trial court erred in concluding it could rely on "any credible evidence" in rejecting the presumption; according to Semrin, section 760 can be overcome only by a tracing rooted in written documentation. Semrin's third contention is that the trial court abused its discretion in awarding her a one-half interest in the Iranian properties. She asserts that the only fair and equitable disposition is for the trial court to order the Iranian properties sold and the proceeds divided between the parties. Finally, Semrin argues that the trial court abused its discretion in allocating the cost of health insurance for the parties' minor son. We reject each of these contentions.

## I. *The Community Property Presumption of Section 760*

Semrin's principal contention on appeal is that the trial court applied the wrong standard of proof in ruling that the California properties were Vahid's separate property. Because the properties were acquired during the marriage, Semrin correctly notes that they are presumed to be community property under section 760. She argues that Vahid was required to produce clear and convincing evidence to rebut this presumption and that the trial court erred in accepting "any credible evidence" to overcome the presumption. We disagree; nothing in the constitutional, statutory, or decisional law of this state requires a higher standard of proof than preponderance of the evidence.

### A. *Standard of Review*

We review the trial court's factual findings regarding the existence and character of the parties' property under the substantial evidence standard. The trial court's selection of what legal principles to apply is subject to de novo review. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1421 [128 Cal.Rptr.2d 31].) This includes the choice of the applicable standard of proof, which is a question of law that we review de novo. (See *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 488–489 [273 Cal.Rptr. 696].)

### B. *The Standard of Proof Required to Overcome the Presumption in Section 760 Is Preponderance of the Evidence*

#### 1. *The Legal Context*

Before addressing Semrin's first claim, it is helpful to review certain statutory rules that necessarily guide our decision. Two different Family Code

sections are relevant to our inquiry. Section 760 states the presumption that, except as otherwise provided by statute, all property acquired during marriage is community property. On the other hand, section 770, subdivision (a)(2) provides, "(a) Separate property of a married person includes all of the following: [¶] . . . [¶] (2) All property acquired by the person after marriage by gift, bequest, devise, or descent."

■ "A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence." (Evid. Code, § 600, subd. (a).) Presumptions are either conclusive or rebuttable, and rebuttable presumptions are divided into two categories, those affecting the burden of producing evidence and those affecting the burden of proof. (Evid. Code, § 601.) The parties do not dispute that Family Code section 760 is a rebuttable presumption affecting the burden of proof, but argue over the standard of proof necessary to prove a fact, like gift, that overcomes the presumption.

■ The Legislature has directed that the standard of proof will generally be by a preponderance of the evidence. Evidence Code section 115[5] states that "[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." As used in this section, the word " '[l]aw' includes constitutional, statutory, and decisional law." (Evid. Code, § 160; see *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 483 [286 Cal.Rptr. 40, 816 P.2d 892].) The preponderance of the evidence standard is the "default standard of proof" in civil actions in this state. (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 546 [110 Cal.Rptr.2d 412, 28 P.3d 151].) While clear and convincing proof is occasionally required by case law, "it remains an *alternative* to the standard of proof by a preponderance of the evidence." (*Liodas v. Sahadi* (1977) 19 Cal.3d 278, 291 [137 Cal.Rptr. 635, 562 P.2d 316].)

■ In this case, no party has cited, and we have not found, any constitutional or statutory provision that would require a burden of proof

---

[5] Evidence Code section 115 provides: " 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

other than preponderance of the evidence to rebut the community property presumption. Semrin's claim that the community property presumption may be overcome only by the production of clear and convincing evidence rests instead on case law. (*Weiner v. Fleischman, supra*, 54 Cal.3d at p. 484.) An examination of the relevant ·case law reveals a host of decisions with inconsistent statements regarding the requisite burden of proof. These cases often lack any consideration of contradictory rulings or substantial analysis of the issue. In evaluating these cases, we are guided by the Supreme Court's admonition that " 'judicial expressions purporting to require clear and convincing [or clear and satisfactory] evidence must be read in light· of the statutory provision for proof by a preponderance of the evidence . . . . [Citations.]' " (*Ibid.*, quoting *Liodas v. Sahadi, supra*, 19 Cal.3d at p. 289, fn. 6.)

### 2. *The Case Law*

Semrin relies on four cases to argue that the community property presumption may be overcome only by clear and convincing evidence. In *Estate of Niccolls* (1912) 164 Cal. 368, 371 [129 P. 278], the court stated, "the burden of overcoming the [community property] presumption by clear and satisfactory ·evidence rests· upon the party claiming that the property is separate." *Gagan v. Gouyd* (1999) 73 Cal.App.4th 835, 843 [86 Cal.Rptr.2d 733] concluded that the contesting spouse "has the burden of proving by clear and convincing evidence that the property is separate, not community." *In re Marriage of Ashodian* (1979) 96 Cal.App.3d 43, 48 [157 Cal.Rptr. 555] stated that postnuptial acquisition of property "is presumed community unless proven otherwise by clear and convincing evidence." Finally, *Thomasset v. Thomasset* (1953) 122 Cal.App.2d 116, 123 [264 P.2d 626] (*Thomasset*) noted "expressions in the decisions to the effect that the separate character of property acquired after marriage is to be established by 'clear and convincing evidence,' 'clear and decisive proof,' [and] 'clear and satisfactory proof.' "[6]

A careful examination of these cases is revealing, however. For example, in *Estate of Niccolls, supra*, 164 Cal. 368, the Supreme Court's statement that "clear and satisfactory evidence" is needed to overcome the community

---

[6] To these cases one might add others, both from the California Supreme Court and the intermediate appellate courts, containing language at least suggestive of the higher· clear and convincing standard of proof. (See, e.g., *Estate of Duncan* (1937) 9 Cal.2d 207, 217 [70 P.2d 174] ["clear and satisfactory proof"]; *Ford v. Ford* (1969) 276 Cal.App.2d 9, 12 [80 Cal.Rptr. 435] ["clear·and convincing evidence"]; *Somps v. Somps* (1967) 250 Cal.App.2d 328, 337 [58 Cal.Rptr. 304] [quoting *Thomasset, supra*, 122 Cal.App.2d at p. 123]; *Olson v. Cornwell* (1933) 134 Cal.App. 419, 424 [25 P.2d 879] ["it has been said that the evidence . . . must be clear and convincing"].)

property presumption (*id.* at p. 371) was dictum, unnecessary to the court's decision. In the very same paragraph, the court related that the evidence regarding the acquisition of the subject property was "without substantial conflict" and that "it pointed *indisputably* to the conclusion that the house and lot in controversy were not community property." (*Ibid.*, italics added.)

In *Gagan v. Gouyd, supra,* 73 Cal.App.4th 835, though the court noted that the wife had "the burden of proving by clear and convincing evidence that the property is separate" (*id.* at p. 843), it held there was *no evidence* that the wife's interest was her separate property (*id.* at p. 844). Thus the wife's proof would have failed under either standard. Moreover, *Gagan* relied on *Ashodian* as support for the proposition that clear and convincing evidence is needed to rebut the community property presumption. *Ashodian,* however, concerned the distinct property presumption attaching to a wife's pre-1975 acquisitions of property by an instrument in writing (§ 803, subd. (a)), and is therefore inapposite. (See *In re Marriage of Ashodian, supra,* 96 Cal.App.3d at p. 48; see also Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2007) ¶ 8:362.2, p. 8-90 [noting that *Ashodian* does not concern community property presumption].)

*Thomasset* acknowledged "expressions in the decisions to the effect that the separate character of property acquired after marriage is to be established by 'clear and convincing evidence,' 'clear and decisive proof,' [or] 'clear and satisfactory proof' " (*Thomasset, supra,* 122 Cal.App.2d at p. 123), but went on to declare that "[t]he decision of the trier of fact must be according to the *preponderance of evidence.* ([Former] Code Civ. Proc., §§ 2061 (5) [enacted 1872; repealed by Stats. 1965, ch. 299, §§ 127, 132, p. 1366, eff. Jan. 1, 1967], 2103.)"[7] (*Thomasset,* at p. 123, italics added.) Later cases have interpreted *Thomasset* in this fashion. (See *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 446 [224 Cal.Rptr. 333, 715 P.2d 253] [citing *Thomasset* for the proposition that "[t]o overcome the community property presumption the spouse asserting a separate property interest must establish *by a preponderance of the evidence* that the parties had a contrary agreement" (italics added)]; *Patterson v. Patterson* (1966) 242 Cal.App.2d 333, 341 [51 Cal.Rptr.

---

[7] The court's citation to former Code of Civil Procedure section 2061, subdivision (5) confirms this analysis. That section directed trial courts to instruct juries "[t]hat in civil cases the affirmative of the issue must be proved, and when the evidence is contradictory the decision must be made *according to the preponderance of the evidence*; that in criminal cases guilt must be established beyond a reasonable doubt." (Italics added.) The statute made no mention of the clear and convincing standard of proof.

339] [noting that community property presumption "may be overcome by a preponderance of the evidence" and citing *Thomasset* as support].) Though relied upon by Semrin, *Thomasset* undermines her position.

Semrin also relies on Witkin as support for her claim that clear and convincing evidence is required to overcome the community property presumption. (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, §§ 38, 39, pp. 187–189.) But Witkin relies primarily on *Estate of Nickson* (1921) 187 Cal. 603 [203 P. 106] (*Nickson*), which is questionable authority for this proposition. In *Nickson,* the court recognized that "this presumption is one which can only be overcome by 'clear and satisfactory proof . . .' or . . . by 'clear and convincing evidence,' " but, the court went on to say, "we are still required to determine the scope and meaning of [those] terms." (*Id.* at p. 605.) *Nickson* then relied on *Freese v. Hibernia Sav. etc. Soc.* (1903) 139 Cal. 392 [73 P. 172], to conclude " ' "[t]he property is merely considered as the property of the community until the contrary is shown by legal proof, and legal proof would seem to be a preponderance of the testimony under all the facts and circumstances of the particular case." . . . We are of the opinion that it is incumbent on the party seeking to overcome the presumption of community property to do no more than to produce such legal evidence as, under all the circumstances of the particular case, would ordinarily produce conviction to an unprejudiced mind, and that in the face of such evidence the naked presumption, unsupported by any testimony, must fall.' " (*Nickson*, at p. 606, quoting *Freese*, at p. 395; accord, *Simonton v. Los Angeles T. & S. Bank* (1928) 205 Cal. 252, 258–259 [270 P. 672].)

Thus, *Nickson* defined "clear and convincing" evidence to mean, simply, a preponderance. But, the high court's seeming embrace of both standards makes it weak authority for either.[8]

Several cases have recognized that a mere preponderance of the evidence is sufficient to overcome the community property presumption. (See, e.g., *In re Marriage of Fabian, supra,* 41 Cal.3d at p. 446 ["To overcome the community property presumption the spouse asserting a separate property interest must establish by a preponderance of the evidence that the parties had a contrary agreement." (dictum)]; *In re Marriage of Haines, supra,* 33 Cal.App.4th at p. 290 ["The burden of proof for the party contesting

---

[8] We note that *Nickson* has not been cited in any published family law case for more than 70 years.

community property status is by a preponderance of the evidence."]; *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 455 [152 Cal.Rptr. 668] ["This presumption is rebuttable [citation], and it may be overcome by a preponderance of evidence."]; *Patterson v. Patterson, supra,* 242 Cal.App.2d at p. 341 ["A presumption arises that the post-marital property is community but this presumption may be overcome by a preponderance of evidence."].)[9] None of these cases cite *Nickson,* or distinguish the cases relied upon by Semrin, or provide any analysis to buttress their conclusion. Examining the policy factors that should determine the burden of proof selected for any particular fact strongly supports the preponderance standard.

### 3. *An Analysis of the Interests at Risk*

As our Supreme Court has observed, the selection of a standard of proof reflects the significance our society attaches to a given issue. " 'The function of a standard of proof . . . is to "instruct the factfinder concerning the degree of confidence our society thinks [the factfinder] should have in the correctness of factual conclusions for a particular type of adjudication." [Citation.] The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.' " (*Weiner v. Fleischman, supra,* 54 Cal.3d at p. 487, quoting *Addington v. Texas* (1979) 441 U.S. 418, 423 [60 L.Ed.2d 323, 99 S.Ct. 1804]; accord, *In re Marriage of Peters* (1997) 52 Cal.App.4th 1487, 1490 [61 Cal.Rptr.2d 493].) The standard of proof required in a given situation "may depend upon the 'gravity of the consequences that would result from an erroneous determination of the issue involved.' [Citation.]" (*Weiner,* at p. 487.)

When the preponderance of the evidence standard applies, the parties to an action share the risk of an erroneous determination more or less equally. (*In re Marriage of Peters, supra,* 52 Cal.App.4th at p. 1490.) " 'Any other standard expresses a preference for one side's interests' " (*Weiner v. Fleischman, supra,* 54 Cal.3d at p. 488, quoting *Herman & MacLean v. Huddleston* (1983) 459 U.S. 375, 390 [74 L.Ed.2d 548, 103 S.Ct. 683]), and the clear and convincing standard is imposed in those cases in which particularly important individual interests or rights are at stake. (See, e.g., *Estate of Ford*

---

[9] "The cases give mixed messages as to the quantum of proof the contesting party must present to overcome the presumption [of community property]." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶ 8:362.1, p. 8-90.) "[T]he contesting party should be held to the normal preponderance of the evidence standard [citation]. [Citation.]" (*Ibid.,* italics omitted.)

(2004) 32 Cal.4th 160, 172–173 [8 Cal.Rptr.3d 541, 82 P.3d 747] [proof of equitable adoption]; *Conservatorship of Wendland, supra,* 26 Cal.4th at pp. 546–548 [withdrawal of artificial nutrition and hydration from conservatee]; *In re Angelia P.* (1981) 28 Cal.3d 908, 922 [171 Cal.Rptr. 637, 623 P.2d 198] [termination of parental rights]; see also *Addington v. Texas, supra,* 441 U.S. at pp. 425, 432–433 [commitment to mental hospital]; *Woodby v. Immigration Service* (1966) 385 U.S. 276, 285 [17 L.Ed.2d 362, 87 S.Ct. 483] [deportation].)

To determine whether the clear and convincing standard of proof is appropriate in this case, we look to the interests of the spouses as defined by the Legislature in the Family Code. (*In re Marriage of Peters, supra,* 52 Cal.App.4th at p. 1491.) Section 760 provides that property acquired during marriage is community property, while section 770 creates an exception for gifts to either spouse. No evident societal interest would seem to favor either provision, and the effect of these two statutes has been stated as a single rule: "Generally, property acquired during marriage by either spouse, other than by gift or inheritance, is community property." (*In re Marriage of Weaver* (2005) 127 Cal.App.4th 858, 864 [26 Cal.Rptr.3d 121].) A determination of how the property in question was acquired—by gift or by purchase with community funds—affects only the classification of the property as either separate or community. (*Peters,* at p. 1491.) The interests of husband and wife in *community* property are "present, existing, and equal" (§ 751), but neither spouse, ordinarily, has any interest in the *separate* property of the other (§ 752).

*Peters* is instructive. In that case, the court reviewed the trial court's determination of the date of separation. Section 771 provides, "The earnings and accumulations of a spouse . . . , while living separate and apart from the other spouse, are the separate property of the spouse." This section will, in some cases, make the date of separation significant in the property allocation. The *Peters* court determined that the "date of separation is proven by a preponderance of evidence rather than by clear and convincing evidence." (*In re Marriage of Peters, supra,* 52 Cal.App.4th at p. 1489.) It concluded that imposing the higher burden of proof reflects a preference for the interests of one of the parties and occurs only when interests " 'more substantial than mere loss of money' " are at stake. (*Id.* at pp. 1490–1491.) Because the "date of separation affects only the classification of property" and each spouse has

identical economic interests at risk in disputing the date of separation, the equal distribution of risk requires application of the preponderance standard. (*Id.* at p. 1491.)

In this case, as in *Peters,* only money is at stake and both spouses share an equal risk that the court may err in classifying the property. If the trial court determines that the property was acquired by gift, then the property will be the receiving spouse's separate property, and the other spouse will lose the half interest in it to which he or she would otherwise be entitled under section 760. If, on the other hand, the trial court were to determine that the property was acquired with community funds (or that the contesting spouse had failed to overcome the community property presumption), then the property will be community property, and the receiving spouse will lose a half interest in it by operation of section 760. "Which spouse loses this economic interest depends on the trial court's determination . . . . The interests of the parties are inverse but equal. Since both parties have identical economic interests at risk in contesting [the method of acquisition], it would otherwise be appropriate to apply the preponderance standard on the issue because of its roughly equal distribution of the risk of error. [Citation.]" (*In re Marriage of Peters, supra,* 52 Cal.App.4th at p. 1491.)

■ In sum, the case law is inconclusive and the nature of the parties' interests at risk in this dispute are purely economic and relatively equal. Thus, we conclude the trial court correctly selected the preponderance of the evidence standard.

C. *Respondents Presented Sufficient Evidence to Overcome the Community Property Presumption** ·

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1578.

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.276(a)(2).)

Gemello, J., and Needham, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 8, 2007, S153953.